Filed 1/30/18

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LARRY BROWN,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>DOCX, LLC, et al.,<br><br>    Real Parties in Interest. | F073964<br><br>(Super. Ct. No. 15CECG01171)<br><br>**OPINION** |

ORIGINAL PROCEEDING; petition for writ of mandate. Kristi Culver Kapetan, Judge.

Brian J. Jacobs; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Petitioner.

No appearance for Respondent.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Lejf E. Knutson; Fidelity National Law Group, Scott Hammel, Josette D. Johnson; Duane Morris, Heather Guerena; Morgan Lewis & Bockius, Joseph Duffy and Joseph Bias for Real Parties in Interest.

-ooOoo-

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of Discussion.

Plaintiff Larry Brown obtained assignments from 1,117 borrowers transferring (1) a 100 percent interest in causes of action relating to their home loans and (2) a 5 percent ownership interest in the real estate securing the home loans. Brown then pursued those causes of action by filing a lawsuit against various entities involved in originating, servicing, or enforcing those loans. Some of the defendants filed a motion to compel joinder of the borrowers, contending the borrowers were both necessary and indispensable parties to the litigation under California's compulsory joinder statute, Code of Civil Procedure section 389.[1] The trial court ordered the joinder of the borrowers and Brown filed a petition for writ of mandate to challenge that order.

First, as to the interpretation and application of section 389 to the facts presented, we conclude, in the unpublished portion of the opinion, that joinder of the borrowers was warranted under subdivision (a)(2)(i) of section 389. The borrowers have an interest in the protection from personal liability provided by California's antideficiency statutes. The complaint seeks to have the deeds of trust securing the loans declared void or unenforceable, which would render the loans unsecured. If the loans became unsecured, the borrowers might lose the protections of the antideficiency statutes. The borrowers' absence from this litigation may impair or impede their ability to protect their interest in the benefits provided by the antideficiency statutes—that is, immunity from personal liability for the loan balance or any deficiency judgment. Therefore, we conclude the conditions for joinder under subdivision (a)(2)(i) of section 389 are present in this case.

Brown argues that, even if joinder is required under section 389, he may sue without joining the borrowers because of the exception contained in section 369, subdivision (a)(3). Under that provision, "a person with whom … a contract is made for the benefit of another" is authorized to "sue without joining as parties the persons for whose benefit the action is prosecuted." (*Ibid.*) Brown contends the assignments qualify as contracts made for the benefit of the borrowers, and he is a person prosecuting the

_____

[1]All unlabeled statutory references are to the Code of Civil Procedure.

action for the benefit of the borrowers. In the published portion of the opinion, we disagree with this interpretation and application of section 369. In our view, section 369 applies when a fiduciary relationship exists between the plaintiff and the persons for whose benefit the action is prosecuted. Here, Brown has no fiduciary relationship with the borrowers. From a textual perspective, we interpret the reference to a contract made for the benefit of another to mean for the *sole* benefit of another, not for the mutual benefit of the plaintiff and another person. Here, the assignments were for the mutual benefit of Brown and the borrowers and, therefore, we conclude section 369, subdivision (a)(3) does not apply and does not authorize Brown to proceed without joining the borrowers.

We therefore deny the petition for writ of mandate and lift the stay.

## FACTS

In July 2012, Life Savers Concepts Association, Inc. (Life Savers), was incorporated as a North Carolina corporation and then registered with the California Secretary of State to do intrastate business in California. Reverend Nigel Johnson is the president of Life Savers. His ministry is nondenominational, uses the name Lifehouse International Ministries, and is based in Stockton, California. Prior to joining Life Savers, Johnson had been a real estate agent, and many of his clients were facing foreclosure. In pursuit of this mission, Life Savers entered into membership agreements with homeowners and former homeowners. From Life Savers' perspective, its members banded together so they could better seek relief from improper actions relating to their home loans and the real property securing the loans.

The members transferred their claims (or the claims of their living trust) against the entities that made, held or serviced their home loans, to Life Savers by executing documents labeled "Agreement for Assignment and Transfer of Rights of Legal Claim." The 25 examples of these agreements attached to Brown's pleading were executed from February 14, 2013, through April 16, 2015.

3.

When the members executed the agreements for assignment and transfer of rights of legal claim, most also executed grant deeds that transferred to Life Savers a 5 percent ownership interest in the real property securing their loans. The grant deeds relevant to this lawsuit total approximately 1,000 pages, so Brown attached 25 examples of the grant deeds to his pleading. The example grant deeds state they granted Life Savers "a 5% ownership interest in the following described real property .…" It appears the purpose of the transfers of an interest in the real property was to assure Life Savers qualified as a "real party in interest" with standing to pursue the assigned causes of action. (§ 367 [California's general standing requirement].)

On March 29, 2013, Life Savers and Brown entered into an assignment agreement. One counterpart of this agreement was signed on behalf of Life Savers by Frank Benjamin, as executive vice president. A second counterpart was signed on behalf of Life Savers by Johnson, as president, and Dawn Burt, as vice president. The basic purpose of the agreement was to transfer to Brown all rights that had been assigned to Life Savers by the homeowners and former homeowners. On August 13, 2014, and December 10, 2015, Life Savers executed a second and a third assignment that transferred to Brown all the rights to pursue claims that had been assigned to Life Savers.

Contemporaneous with the second assignment of claims to Brown, Life Savers executed a document that assigned "all of its interest in the Grant Deeds assigned it by all LifeSavers members" to Brown. Similarly, when Life Savers executed the third assignment to Brown, it also executed an assignment agreement that quitclaimed to Brown all of Life Savers' right, title and interest in the real property conveyed to Life Savers by the grant deeds from its members. Based on these assignments, Brown claims to hold a 5 percent ownership interest in each of the properties that secured the home loans of the members.[2]

_____

[2]This opinion uses the term "borrower-assignors" to refer to the individuals, married couples, and trustees of living trusts whose claims and property interests were assigned to Life Savers and then assigned to Brown.

The wording of the agreements for assignment and transfer of rights of legal claim to Life Savers and the subsequent assignments from Life Savers to Brown has created disputes about meaning, scope, and effectiveness of the transfers. (See 7 Cal.Jur.3d (2011) Assignments, §§ 42–44, pp. 68–72 [construction and legal effect of assignments].) Those disputes are not addressed in this opinion. Instead, we assume the wording of the assignment documents effectively transferred (to the extent allowed by California law) all of the rights and ownership interests that Brown contends he holds. In other words, we assume Brown is the complete (i.e., 100 percent) owner of the causes of action and is a 5 percent owner of the real property.

**PROCEEDINGS**

In April 2015, Brown filed a civil action in Fresno Superior Court to pursue the claims the borrower-assignors had transferred to him. In December 2015, Brown filed a second amended complaint (complaint), which was the operative pleading when the trial court considered and decided the motion to compel joinder that is the subject of this writ proceeding.[3]

Exhibit A to the complaint listed 1,117 borrower-assignors in alphabetical order and identified the real property securing their loans by street address and assessor's parcel number.[4] The complaint organized the borrower-assignors into three categories. In the first category, composed of borrower-assignors identified in exhibit K to the complaint, no foreclosure proceeding had been initiated at the time the complaint was filed (Group K). The second category contained borrower-assignors for whom a notice of default and election to sell under deed of trust had been recorded. These borrower-assignors were listed in exhibit L to the complaint (Group L). The third category contained the borrower-assignors whose property had been sold in foreclosure. The

---

[3]On June 17, 2016, Brown filed a third amended complaint in response to the trial court's order sustaining a demurrer to certain causes of action with leave to amend within 10 days.

[4]Defendants assert the parcels identified as securing the 1,117 loans are located in 32 counties and less than 2 percent of the properties (i.e., 22) are located in Fresno County.

borrower-assignors in this group were listed in exhibit M to the complaint (Group M). Brown alleged he brought the lawsuit *solely* in the capacity as the assignee of claims of the borrower-assignors.

The defendants named in the complaint were Bank of America, N.A.; Countrywide Financial Corporation; BAC Home Loans Servicing, LP; ReconTrust, N.A.; Mortgage Electronic Registration Systems, Inc. (MERS); MERSCORP Holdings, Inc.; The Bank of New York Mellon; U.S. Bank, N.A.; Aurora Bank FSB, a federal savings bank; JPMorgan Chase & Co.; JPMorgan Chase Bank, National Association; Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A.; DOCX, LLC, a Georgia limited liability company; and Lender Processing Services, Inc., a Delaware corporation.[5]  The complaint set forth causes of action labeled (1) wrongful foreclosure, (2) reformation, (3) injunctive relief, (4) declaratory relief, (5) cancellation of instruments, (6) violation of Government Code section 8214, (7) violation of Penal Code section 496,[6] (8) conversion, (9) intentional interference with contract, (10) negligent interference with contract, (11) accounting, and (12) injunctive relief for violation of Civil Code section 2923.55.

The complaint alleged a variety of actions taken by the defendants in connection with the loans and real property security were unlawful or invalid.  Brown alleged transfers of the promissory notes and deeds of trust to the trustee of a real estate mortgage investment conduit (REMIC) violated the terms of the REMIC's pooling and servicing

---

[5]On January 3, 2014, Lender Processing Services, Inc., was converted from a corporation to a Delaware limited liability company named Black Knight InfoServ, LLC.  Counsel for this entity submitted a certificate from the Delaware Secretary of State indicating that Black Knight InfoServ, LLC, was duly formed under the laws of Delaware and, as of October 26, 2017, was in good standing and had a legal existence so far as the records of the Secretary of State's office showed.

[6]Subdivision (a) of Penal Code section 496 makes it a crime to buy or receive any property "that has been obtained in any manner constituting theft" while knowing the property has been so obtained.  Any person injured by this crime "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  (Pen. Code, § 496, subd. (c).)  Brown has alleged actual damages of $800 million and requested treble damages of $2.4 billion under this statute.

6.

agreement and federal tax laws specifying when REMIC's qualify as pass-through entities rather than taxable entities.  In particular, Brown alleged transfers were attempted more than three months after the closing date of the REMIC.  He also alleged the trustee of the REMIC could not enforce the debt without physical possession of the promissory note.  Other alleged wrongs included (1) "forging and backdating of documents, often called 'robosigning'"; (2) "foreclosures prosecuted by parties without rights to do so"; (3) a general failure to keep adequate records; and (4) false notarizations of documents relating to assignments of the loans or relating to foreclosures under the deeds of trust.

The prayer for relief in the complaint requested general damages exceeding $800 million, special damages in an amount to be proven at trial, an accounting between the borrower-assignors and defendants, and the recovery of the amounts the accounting shows are due to the borrower-assignors.  It also requested reformation of each deed of trust "otherwise designating MERS as the nominee of the named beneficiary, to embody the true agreement of the parties, modified to become mortgages with the current holder of the related Promissory Note as mortgagee."  Under the causes of action for declaratory relief and cancellation of instruments, the complaint requested the deeds of trusts, the notices of default and documents purportedly transferring the secured loans to the trustee of a securitized trust (i.e., a REMIC) be decreed void.  The request for injunctive relief sought to prevent all sales or attempted sales of any of the properties securing the loans pursuant to the powers of sale contained in the deeds of trust.

***Joinder Motion***

Brown's complaint was challenged in a variety of motions and a demurrer.  In this proceeding, we are concerned with the February 2016 motion of DOCX, LLC, and Lender Processing Services, Inc.[7] (jointly, DOCX), for orders (1) compelling joinder of

---

[7]More than two years before the motion was filed, Lender Processing Services, Inc., was converted to Black Knight InfoServ, LLC, a Delaware limited liability company, and, thus, the corporation no longer had a legal existence.  Consequently, the motion to compel joinder, as well as the return and the certificate of interested entities or persons submitted to this court, should have been filed by Black Knight InfoServ, LLC, as successor entity to Lender Processing

the borrower-assignors as necessary parties and (2) dismissing the action for failing to join indispensable parties. Later in February, defendants Aurora Commercial Corp., as successor entity to Aurora Bank, FSB; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and U.S. Bank, National Association joined in the motion to compel joinder of the borrower-assignors. In March 2016, Brown filed an opposition to the joinder motion, arguing each of the claims was assignable and California's joinder statute did not require the joinder of the borrower-assignors.

***Trial Court's Ruling***

On March 30, 2016, the trial court held a hearing on the pending motions and demurrer. On June 3, 2016, the trial court signed and filed a written order granting the motion for joinder as to the borrower-assignors who assigned a partial ownership interest in the real property that secured their loan. The order directed the parties, within 20 days, "to meet and confer on a process to identify the parties subject to joinder and discuss, if applicable, a procedure by which to join such parties." The rationale for the trial court's order is described in part II.D, *post*.

***Petition for Writ of Mandate***

On June 29, 2016, this court received Brown's petition for writ of mandate challenging the order compelling joinder of the borrower-assignors. On July 1, 2016, this court issued an order staying the trial court's order "insofar as it relates to the motion for joinder and directs the parties 'to meet and confer within the next 20 court days regarding a procedure for joining the partial assignors.'" On July 22, 2016, after reviewing Brown's petition and supporting papers, we issued an order to show cause, established a schedule for filing the defendants' return and Brown's traverse, and extended the stay pending further order of this court. DOCX—the parties filing the motion to compel joinder—filed a return identifying themselves as real parties in interest.

---

Services, Inc. On remand, counsel for the successor entity shall accurately identify the entity it is representing in all papers filed in the superior court. (See Bus. & Prof. Code, § 6068, subd. (d).) The successor entity so identified must actually exist.

*Related Federal Lawsuits*

On September 12, 2012—before Brown received Life Savers' assignment of any of the claims raised in the present action—Brown filed a complaint in the Superior Court for Riverside County as a self-representing litigant. In November 2012, the lawsuit was removed to the United States District Court for the Central District of California, Eastern Division. In April 2013, Brown filed an amended complaint asserting 23 causes of action against 21 named defendants. Subsequently, Brown obtained legal representation and, in September 2013, filed a second amended complaint with the federal court. That pleading pursued assigned claims relating to 1,349 properties and alleged seven causes of action against 14 named defendants.

The defendants in the federal action, including Bank of America, MERS and others, filed a motion to dismiss, arguing Brown lacked standing to sue. The district court determined the facts alleged did not establish Brown's standing and granted the motion to dismiss without prejudice and with leave to amend. (*Brown v. Bank of America*, *N.A.* (C.D.Cal., Feb. 24, 2014, No. CV–12–02009–TJH) [2014 U.S. Dist. Lexis 197478; 2014 WL 12707378].) The district court directed that if Brown filed a third amended complaint, "it shall be limited to a single mortgage," and that "claims regarding each of the remaining 1,348 mortgages shall be filed in separate actions." (2014 U.S. Dist. Lexis 197478 at p. *4; 2014 WL 12707378 at p. *2.)

Brown chose not to file a third amended complaint and, instead, filed an appeal. On August 18, 2016—about four weeks after we issued the order to show cause in this writ proceeding—the Ninth Circuit Court of Appeals filed a memorandum decision affirming the dismissal. (*Brown v. Bank of America*, *N.A.* (9th Cir. 2016) 660 Fed.Appx. 506.) The court stated Brown's standing was entirely dependent upon a valid assignment. (*Id.* at p. 509.) The court concluded Brown failed to provide proof that he

had been assigned claims by the borrowers he purported to represent[8] and, therefore, he failed to carry his burden of establishing the district court possessed subject matter jurisdiction. (*Id*. at pp. 508–509.)

On August 8, 2014—about five and a half months after the district court dismissed the first federal action—Brown filed a second lawsuit in the United States District Court for the Central District of California, Western Division. The second federal lawsuit related to approximately 1,200 additional loans and properties. The defendants in the second federal lawsuit filed a motion to dismiss, contending Brown had improperly joined claims relating to the 1,200 deeds of trust and was collaterally estopped by the February 2014 order from relitigating the issue. In December 12, 2014, the district court granted the motion to dismiss, agreeing with the defendants that Brown was collaterally estopped from relitigating the issue of joinder of more than one deed of trust. Brown chose not to file an amended complaint pursuing claims related to a single loan and property. He also chose not to appeal the order dismissing the second federal lawsuit without prejudice. About three months after Brown informed the federal district court of his choices, he filed the present lawsuit in the Fresno Superior Court.

## DISCUSSION

### I.     Background[*]

This lawsuit involves the assignment of a large number of claims to a single plaintiff. To provide context for the questions raised on appeal, we set forth some basic principles governing a plaintiff's standing to sue, the assignment of causes of action, and the combination of a large number of claims into a single lawsuit.

---

[8]Brown has not repeated this failure in the present action. His complaint contained detailed descriptions of the assignments and attached 25 examples of assignments and 25 examples of grant deeds conveying a 5 percent ownership interest in the real property securing the loans.

[*]See footnote, *ante*, page 1.

10.

## A.	Standing to Sue

Under section 367, "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."  Our Supreme Court has referred to this section as containing California's "general standing requirements." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1249.)  For purposes of section 367, a "real party in interest" ordinarily is defined as the person possessing the right sued upon by reason of the substantive law.  (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605; see 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 121, p. 187.)  Here, Brown contends he is a real party in interest by virtue of the assignments obtained from the borrower-assignors.

## B.	Assignment of Causes of Action

### 1.	California's Statutes

Civil Code section 954 states "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."  The term "thing in action" means "a right to recover money or other personal property by a judicial proceeding."  (Civ. Code, § 953.)  Our Supreme Court has summarized these provisions by stating:  "A cause of action is transferable, that is, assignable, by its owner if it arises out of a legal obligation or a violation of a property right.  (Civ. Code, § 954.)" (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)  The enactment of Civil Code section 953 and 954 lifted many restrictions on assignability of causes of action.  (*Wikstrom v. Yolo Fliers Club* (1929) 206 Cal. 461, 464; *AMCO Ins. Co. v. All Solutions Ins. Agency, LLC* (2016) 244 Cal.App.4th 883, 891 (*AMCO Insurance*).)

Therefore, California's statutes establish the general rule that causes of action are assignable.  (*AMCO Insurance*, *supra*, 244 Cal.App.4th at p. 891.)  This general rule of assignability applies to causes of action arising out of a wrong involving injury to personal or real property.  (*Time Out*, *LLC v. Youabian*, *Inc.* (2014) 229 Cal.App.4th 1001, 1009.)

11.

### 2. *Aggregation of Claims by Assignment*

The idea of an assignee, or group of assignees, pursuing claims on behalf of over 1,000 assignors is not unique. In *Sprint Communications Co., L.P. v. APPC Services, Inc.* (2008) 554 U.S. 269 (*Sprint*), approximately 1,400 payphone operators assigned legal title to their claims for amounts due from Sprint, AT & T, and other long-distance carriers to a group of collections firms described as "aggregators." (*Id.* at p. 272.) For our purposes, we need not describe the details of the payphone operators' claims for compensation for "dial-around" calls. The legal issue presented to the United States Supreme Court was whether the assignees had standing to pursue the claims in federal court even though they had promised to remit the proceeds of the litigation to the assignor. (*Id.* at p. 271.) The court concluded the assignees had standing, stating:

> "Petitioners have not offered any convincing reason why we should depart from the historical tradition of suits by assignees, including assignees for collection. In any event, we find that the assignees before us satisfy the Article III standing requirements articulated in more modern decisions of this Court." (*Id.* at pp. 285–286.)

The court also considered the argument that the aggregators were attempting to circumvent the class action requirements of rule 23 of the Federal Rules of Civil Procedure. (*Sprint*, *supra*, 554 U.S. at pp. 290–291.) The court rejected this argument on the grounds that (1) class actions were permissive, not mandatory, and (2) "class actions constitute but one of several methods for bringing about aggregation of claims, *i.e.*, they are but one of several methods by which multiple similarly situated parties get similar claims resolved at one time and in one federal forum. [Citations.]" (*Id.* at p. 291.)

Here, we conclude California's rules of law concerning standing and assignments do not prohibit an assignee's aggregation of a large number of claims against a handful of defendants into a single lawsuit. Consequently, any limitations or conditions on this type of aggregation of assigned claims must come from other rules of law, such as California's compulsory joinder statute. (See *Sprint*, *supra*, 554 U.S. at p. 292 [to address practical problems that might arise because aggregators, not payphone operators, were suing,

12.

district "court might grant a motion to join the payphone operators to the case as 'required' parties" under rule 19 of Fed. Rules Civ. Proc.].)

### C. Other Ways to Combine Claims

The aggregation of claims from multiple assignors is not the only method for combining claims of a large number of individuals in a single lawsuit. Other ways include class actions (§ 382), so-called mass actions (§ 378), consolidation (§ 1048), and coordination (§§ 404–404.9).

#### 1. Class Actions

Class actions are authorized by section 382, which states one or more persons may sue for the benefit of numerous persons when the question is one of a common or general interest. (See 4 Witkin, Cal. Procedure, *supra*, Pleading, §§ 267–270, pp. 343–347 [class actions in general].) A chapter of the California Rules of Court is devoted to the management of class actions brought under section 382. (Cal. Rules of Court, rules 3.760–3.771.) Thus, California recognizes class actions as a procedural mechanism for resolving in a single lawsuit claims held by a large number of persons.

#### 2. Mass Actions

Another way for homeowners to realize the economies of scale resulting from combining their claims is joining together as coplaintiffs in a single lawsuit. This strategy has been referred to as a mass action in some decisions. (*Petersen v. Bank of America Corp.* (2014) 232 Cal.App.4th 238, 240 (*Petersen*); see *Aghaji v. Bank of America, N.A.* (2016) 247 Cal.App.4th 1110; cf. 28 U.S.C. § 1332(d)(11)(B) [federal definition of "mass action"].)

For example, in *Petersen*, 965 plaintiffs who borrowed money from Countrywide Financial Corporation in the mid-2000's banded together and filed a single lawsuit against Countrywide and related entities. (*Petersen*, *supra*, 232 Cal.App.4th at pp. 242, 243.) The plaintiffs alleged Countrywide developed a strategy to increase its profits by using captive real estate appraisers to provide dishonest appraisals that inflated home

prices and inducing borrowers to take loans Countrywide knew they could not afford by misleading them about their ability to repay and misrepresenting the terms of the loans. (*Id*. at p. 241.) The plaintiffs alleged Countywide did not intend to keep these loans, but intended to bundle them and sell them on the secondary market to unsuspecting investors who would bear the risk the borrowers could not repay. (*Id*. at pp. 241, 245.) Countrywide and the related defendants demurred on the ground of misjoinder of the plaintiffs in violation of section 378, California's permissive joinder statute. The trial court sustained the demurrer without leave to amend and dismissed all of the plaintiffs except for the plaintiff whose name appeared first in the caption. (*Petersen*, at p. 247.) The Fourth Appellate District reversed and remanded for further proceedings. (*Id*. at p. 256.)

In *Petersen*, the Fourth District resolved two questions. (*Petersen*, *supra*, 232 Cal.App.4th at p. 241.) First, it concluded the operative pleading alleged wrongs arising out of "'the same … series of transactions'" that would entail litigation of at least one common question of law or fact. (*Ibid*.; see § 378.) The court noted the individual damages among the 965 plaintiffs would vary widely, but the question of liability provided a basis for joining the claims in a single action. (*Petersen*, at p. 253.) Second, the court concluded "California's procedures governing permissive joinder are up to the task of *managing* mass actions like this one." (*Id*. at p. 242.)

To summarize, *Petersen* is an example of a case where California's permissive joinder statute allowed a large number of homeowners to pursue claims for misrepresentation, unfair competition, and wrongful foreclosure against a lender and related entities in a single lawsuit. (*Petersen*, *supra*, 232 Cal.App.4th at p. 246; see § 378.)

**D.     Summary**

The foregoing illustrates three ways in which the claims of multiple homeowners may be combined and pursued in a single lawsuit. Here, Brown's lawsuit began as an

14.

aggregation of claims by a single assignee. The trial court's order compelling the joinder of the individual homeowners pursuant to California's compulsory joinder statute converted the lawsuit into what the court in *Petersen*, *supra*, 243 Cal.App.4th 238 described as a mass action.

## II. Joinder of Necessary Parties[*]

### A. Section 389

Section 389 is California's compulsory joinder statute. In 1971, the Legislature made significant changes to section 389 and has not amended it since. (Stats. 1971, ch. 244, § 15, p. 376.) The current version of section 389, subdivision (a) provides:

> "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete *relief* cannot be accorded among those already parties or (2) [the party to be joined] *claims an interest* relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter *impair or impede his ability to protect that interest* or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (Italics added.)

The California Law Revision Commission comment on the 1971 amendment to the compulsory joinder statute states, in part:

> "Section 389 is revised to substitute practically in its entirety Rule 19 of the Federal Rules of Civil Procedure for former Section 389.… [¶] Basically, as amended, Section 389 requires joinder of persons materially interested in an action whenever feasible.… [¶] … [¶]
>
> "Section 389 formerly attempted not only to avoid prejudice to the parties or absent person but also to promote the general convenience of the courts by preventing a multiplicity of suits. As revised, Section 389 takes a different approach; it limits compulsory joinder to those situations where the absence of a person may result in substantial prejudice to that person or to the parties already before the court." (Recommendation and Study Relating to Counterclaims and Cross-Complaints, Joinder of Causes of

---

[*]See footnote, *ante*, page 1.

Action, and Related Provisions (Oct. 1970) 10 Cal. Law Revision Com. Rep. (1971) pp. 500, 535–536.)"[9]

The similarities between section 389 and rule 19 of the Federal Rules of Civil Procedure allow federal cases discussing the federal rule to be relied upon when interpreting and applying section 389. (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 296.)

## B. Standard of Review

Section 389, subdivision (a) states that certain persons "shall be joined as a party" if any of the three listed conditions are satisfied. Despite the use of the mandatory term "shall," the decision to require the joinder of a particular person is discretionary. (See *Morrical v. Rogers* (2013) 220 Cal.App.4th 438, 461.) The discretion being exercised relates to whether one or more conditions listed in the statute exists. A proper exercise of that discretion requires the court to weigh factors of practical realities and other considerations. (*Ibid*.) Because the trial court's determinations as to the conditions set forth in section 389, subdivision (a) are discretionary, those determinations are reviewed by appellate courts under the abuse of discretion standard. (*Morrical v. Rogers*, *supra*, at p. 461.)

### 1. Types of Abuse of Discretion

Two types of abuse of discretion are relevant in this proceeding. First, "when the challenged determination involves the trial court's weighing of interrelated factors, the result of that weighing process generally will be upheld on appeal so long as the trial court did not exceed the bounds of reason or contravene the uncontradicted evidence." (*County of Kern v. T.C.E.F.*, *Inc.* (2016) 246 Cal.App.4th 301, 316 (*T.C.E.F.*) [grant of preliminary injunction was discretionary determination requiring the weighing of factors]; see *Bank of America*, *N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089

---

[9]Courts are not required to take judicial notice of the recommendations of the California Law Revision Commission because they are published and a citation to published materials is sufficient. (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1410, fn. 3.)

16.

[abuse of discretion standard measures whether, given the established evidence, the trial court's decision falls within the permissible range of options set forth by the applicable legal criteria].) Second, when the challenged determination is the trial court's choice of applicable legal principles, "[a]n abuse of discretion is shown when the trial court applies the wrong legal standard." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) In other words, the abuse of discretion standard does not permit trial courts to apply an incorrect rule of law. (*T.C.E.F.*, *supra*, at p. 316.) A trial court's resolution of a question of law is subject to independent review on appeal. (*Ibid.*)

### 2.     *Prejudice Requirement*

Under the California Constitution, no judgment shall be set aside for procedural error unless the appellate court "shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) This provision sets forth the constitutional doctrine of reversible error. The doctrine and the concept of a miscarriage of justice is developed in section 475, which states no decision will be reversed due to an error in the proceedings unless the error caused the complaining party a substantial injury and a different result would have been probable if such error had not occurred. Section 475 also states there is "no presumption that error is prejudicial."

Under the constitutional and statutory provisions, reversal for an abuse of discretion is warranted only when the error is substantial and prejudicial. (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1223; see *Mission Imports*, *Inc. v. Superior Court* (1982) 31 Cal.3d 921, 932 [discretionary decision will be reversed only if there has been a *prejudicial* abuse of discretion].) In other words, the alleged abuse of discretion must have resulted in an injury sufficiently grave to amount to a manifest miscarriage of justice. (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.)

### C.     The Joinder Motion

DOCX's motion to compel joinder was made pursuant to section 389, subdivision (a) and argued the borrower-assignors were necessary parties under each of the three

17.

listed conditions. First, DOCX contended the absence of the borrower-assignors would prevent complete relief being accorded among those already appearing in the action. (See § 389, subd. (a)(1).) DOCX argued complete relief could not be given to Brown or to them on the claims seeking reformation or cancellation of the deeds of trust and related instruments or on the claim for declaratory relief because the borrower-assignors, not Brown, were parties to those instruments. DOCX also theorized that any money judgment obtained by Brown would likely be limited by his 5 percent ownership interest in the real property, leaving them potentially exposed to further claims by the borrower-assignors who retained the 95 percent ownership interest.

Second, DOCX contended the borrower-assignors "claim[] an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may (i) as a practical matter impair or impede [the borrower-assignors'] ability to protect that interest." (§ 389, subd. (a)(2).)

Third, DOCX contended the borrower-assignors claim an interest relating to the subject of the action and are so situated that the disposition in their absence may leave DOCX "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of [the borrower-assignors'] claimed interest." (§ 389, subd. (a)(2)(ii).) DOCX asserts that if Brown were to prevail on his claims for monetary damages, they and the other defendants would argue any recovery would be limited to Brown's 5 percent interest under his partial assignment, leaving the possibility that the borrower-assignors, who retained a 95 percent interest, could pursue additional claims against DOCX to recover their proportionate interests on the claims alleged by Brown in his action.

### D. The Trial Court's Decision

The trial court's written order did not explicitly address the conditions listed in section 389, subdivision (a) and determine the borrower-assignors were necessary parties because one or more of the conditions existed. Instead, the court adopted a method of

analysis classifying the assignments in question as partial assignments of claims related to real property, identified the rules of law applicable to partial assignments, and applied those rules to conclude the borrower-assignors were necessary parties who must be joined.

The trial court described the assignments by stating Brown alleged each of the assignments upon which he based the complaint "are partial assignments of a 5% interest in each of the respective parcels." Based on this partial assignment of ownership of the real property, the court stated Brown could "only be said to have received a partial assignment of an interest in any of the alleged claims *related to the property*." (Italics added.) We interpret the court's use of the phrase "claims related to the property" as referring to causes of action that, if successful, could result in the transfer of an interest in real property. For example, if a cause of action seeking to have a deed of trust declared void or invalid was successful, the security interest created by the deed of trust and transferred to the lender would, in effect, be transferred from the entity holding the loan and deed of trust back to the borrower-assignor. Thus, a cause of action requesting a deed of trust be declared or decreed void or invalid would be a "claim related to [real] property."

The trial court reviewed the rules of law applicable to partial assignments by citing a discussion in Witkin that stated "there is no longer any procedural obstacle to enforcement of the partial assignment. The plaintiff partial assignee may sue by joining the partial assignor and any other partial assignees, either as plaintiffs or as defendants." (4 Witkin, Cal. Procedure, *supra*, Pleading, § 130, p. 197.) The court interpreted *Martin v. Howe* (1922) 190 Cal. 187 as requiring the joinder of the partial assignors in such a lawsuit. In discussing cases cited by the parties, the court distinguished between claims *related to the real property* and claims not related to the real property. The court concluded only a person holding title to the real property can sue under an assigned cause

19.

of action related to real property. Applying the rules governing assignments, the court concluded:

> "Thus, any total assignment of an interest in a claim related to the property itself is invalid unless accompanied by a transfer of property. Here, … Brown has only a 5% interest in each of the properties at issue. He therefore can only be said to have received a partial assignment of an interest in any of the alleged claims related to the property. With respect to such claims, the partial interest rule set forth in *Martin v. Howe*, *supra*, 190 Cal. at 194 is valid and applies."

Next, the trial court turned to Brown's complaint and determined which causes of action were *related to the real property*. As to the wrongful foreclosure action for which Brown sought only money damages, the court concluded it was not related to the real property because (1) the relief sought did not involve the transfer of an interest in the real property and (2) the parties had cited no authority showing the cause of action would affect title to the property. Thus, the court did not regard each of the wrongful foreclosure causes of action as being a partially assigned claim related to real property. In contrast, the court determined the causes of action for (1) reformation of the deeds of trust; (2) cancellation of the deeds of trust, notices of default, and assignments of the loans as void; and (3) the injunction of foreclosures were claims related to the borrower-assignors' respective real properties.

Based on its legal conclusion that any partial assignment of a claim related to real property may be pursued by the partial assignee so long as he joins the partial assignors in the action, the court concluded the borrower-assignors, as partial assignors of claims related to real property, were necessary parties and Brown was required to join them in the lawsuit.

### E.     Assumption as to Applicable Law

#### 1.     *Role of Section 389*

Brown contends the trial court committed legal error by interpreting *Martin v. Howe* as requiring joinder of the borrower-assignors and by failing to analyze the three

conditions for joinder contained in section 389, subdivision (a). In Brown's view, section 389 sets forth the principles governing the compulsory joinder of necessary parties, and therefore, the proper analysis of whether the borrower-assignors are necessary parties must be based on the application of section 389, not case law principles predating the 1971 amendment of section 389.

For purposes of this writ proceeding, we assume section 389 governs whether assignors of a 100 percent interest in causes of action related to real property along with a 5 percent ownership interest in the real property are necessary parties. Restating this assumption in the negative, the joinder question before this court is *not* governed by the application of categorical judge-made rules that (1) predate the 1971 revision of California's compulsory joinder statute and (2) address the joinder of partial assignors.[10]

### 2. *Implied Analysis*

Brown contends the trial court did not analyze whether the facts of this case met one or more of the conditions for joinder set forth in section 389, subdivision (a). This contention is the equivalent of arguing the trial court did not impliedly consider the statutory conditions and conclude one or more of them had been met. For purposes of this writ proceeding, we assume the trial court's only rationale for granting the motion to compel joinder was the rationale stated in its written order. In other words, we assume the trial court did not impliedly determine one or more of the statutory criteria for joinder had been met.

### 3. *Consequences of Assumptions*

We have assumed (1) the joinder question should have been resolved by applying the conditions set forth in section 389, subdivision (a) to the facts and circumstances of this case and (2) the trial court did not perform this statutory analysis in reaching its determination. In short, we have assumed the trial court abused its discretion by applying

---

[10]Based on these assumptions about the controlling role of the statute, we do not address the parties' legal arguments relating to *Martin v. Howe*, *supra*, 190 Cal. 187 and *Chao Fu*, *Inc. v. Chen* (2012) 206 Cal.App.4th 48.

the wrong legal standard. (*T.C.E.F.*, *supra*, 246 Cal.App.4th at p. 316 [application of incorrect rule of law is an abuse of discretion].) These assumptions narrow the questions presented to whether the assumed legal error was *prejudicial* to Brown—that is, whether "a different result would have been probable if [the assumed legal] error … had not occurred or existed." (§ 475.)

### F. Prejudice and Probability of a More Favorable Result

#### 1. Basic Principles

The principles guiding our analysis of prejudice are contained in section 475, which provides (1) there is "no presumption that error is prejudicial" and (2) appellate courts are authorized to reverse a ruling only if "it shall appear from the record that such error … was prejudicial." (See pt. II.B.2, *ante*.) Under these principles, the appellant has the burden of establishing the existence of prejudice from the error and that prejudice must affirmatively appear in the record. (*Kettelle v. Kettelle* (1930) 110 Cal.App. 310, 314; *Eddie v. Schumacher Wall Board Co.* (1926) 79 Cal.App. 318, 322.) Viewed pragmatically, the question of prejudice addresses whether any purpose would be served by remanding the matter to the trial court with directions for it to explicitly apply the provisions of section 389. If the outcome would be the same, there is no point in remanding.

#### 2. Method of Analysis

Our examination of the record to determine whether Brown has carried his burden of showing a more favorable result would have been probable requires us to apply the conditions in section 389, subdivision (a) to the appellate record and decide whether the trial court reasonably could have determined that the borrower-assignors were not necessary parties. If such a determination is reasonably possible, then remand to the trial court to exercise the statutory discretion granted in section 389 would be appropriate.

Stated in general terms, section 389 limits compulsory joinder to those situations where the absence of a person may result in substantial harm to that person or to the

parties already before the court. (Recommendation and Study Relating to Counterclaims and Cross-Complaints, Joinder of Causes of Action, and Related Provisions, *supra*, 10 Cal. Law Revision Com. Rep. at p. 536.) This concern about substantial harm to the absent person or to a party before the court is reflected in the statutory language about the *interests* of the absent person and the impact (on either that person or the litigants) of completing the litigation without joining the absent person. For instance, one of the statutory conditions for joinder exists when the absent person "claims an *interest* relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that *interest*." (§ 389, subd. (a)(2), italics added.) In accordance with this statutory language, our analysis turns to the *interests* of the borrower-assignors "relating to the subject of the action."

### 3. *Interests of the Borrower-Assignors*

In Brown's view, the interests of the borrower-assignors cannot be adversely affected by the outcome of the action, and therefore, they are not necessary parties. Brown contends the borrower-assignors "are seeking either recompense from already completed foreclosures or relief from foreclosures in process or anticipated." Brown refers to the fact the borrower-assignors already are signatory to promissory notes and deeds of trust and argues "at the worst, they will be in the same position as they were before the suit was filed." Brown concludes the borrower-assignors "have no interests that need protecting and are, accordingly, not necessary parties."

Our consideration of Brown's arguments involves the following steps. First, the statutory term "interest" must be defined. Second, that definition must be applied to identify particular interests of the borrower-assignors "relating to the subject of the action." (§ 389, subd. (a)(2).) Third, the potential impacts of the litigation on those interests must be examined to determine whether the action may "as a practical matter

23.

impair or impede" the ability of the borrower-assignors to protect those interests. (§ 389, subd. (a)(2)(i).)[11]

In construing section 389's reference to "an interest" claimed by a nonparty, we recognize the word "interest" has many definitions and most of those definitions are of a general or broad nature. Brown has not attempted to restrict the scope of the compulsory joinder provisions by arguing for a narrow definition of "interest." Instead, he agreed during oral argument that the following definition of "interest" from Black's Law Dictionary was appropriate: "Collectively, the word includes any aggregation of rights, privileges, powers, and immunities; distributively, it refers to any one right, privilege, power, or immunity." (Black's Law Dict. (9th ed. 2009) p. 885.) We adopt this definition of "interest" because nothing in the text of section 389, which refers to "an interest," "that interest," and "his claimed interest," suggests a narrow definition of "interest" was intended. For instance, use of the word "an" before "interest" does not indicate an intention to limit the scope of the word "interest." (See *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396 [use of indefinite article "an" signals a general reference].) Also, a broad definition of "interest" promotes the legislative purpose of joining persons to avoid substantial prejudice to the parties or absent person. (See Recommendation and Study Relating to Counterclaims and Cross-Complaints, Joinder of Causes of Action, and Related Provisions, *supra*, 10 Cal. Law Revision Com. Rep. at p. 536.)

We further conclude that in defining "interest" to include rights, privileges, powers and immunities, the term "immunity" is used "in the very specific sense of non-liability or non-subjection to a power on the part of another person." (Hohfeld, *Fundamental Legal Conceptions as Applied in Judicial Reasoning* (1917) 26 Yale L.J. 710, 746.) Accordingly, for purposes of this writ proceeding, we use the term

---

[11]We sent counsel a letter listing specific questions related to this line of inquiry to assist them in preparing for oral argument and gave counsel the option of submitting a written response on or before the Friday before oral argument.

"immunity" and, therefore, the term "interest," to include a borrower's nonliability for a deficiency judgment in the event the amount owed on the loan exceeded the value of the real estate collateral.[12]

"[A] creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute." (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 733.) California's antideficiency statutes—sections 580a through 580d and 726—reflect a legislative policy strictly limiting the right of lenders to recover deficiency judgments for the amount of the debt in excess of the value of the real property security.[13] The provisions limit or prohibit lenders from obtaining personal judgments against borrowers where the lender's sale of real property security generates proceeds insufficient to cover the amount of the debt. More specifically, these antideficiency statutes bar a deficiency judgment following *nonjudicial* foreclosure of real property or *any* foreclosure of a purchase money deed of trust on a residence. (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 632; see generally 5 Miller & Starr, Cal. Real Estate (4th ed. 2017) §§ 13:156 [effect of antideficiency legislation], 13:302 [third-party loan to purchase residential property], pp. 13–601 to 13–603, 13–1290 to 13–1295.) "Generally speaking, the [nonjudicial] foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 927.)

Based on California's antideficiency statutes, we conclude the "interests" of the borrower-assignors in this case include (but are not limited to) the statutory immunity from personal liability for a deficiency judgment, to the extent such immunity applies to their particular situations. At oral argument, the parties agreed with this conclusion about

---

[12]This situation sometimes is referred to as the property being "under water."

[13]The Legislature's policy choices are bolstered by the provision stating any purported waiver of the antideficiency statutes is against public policy and therefore void. (§ 580e, subd. (e); see *Freedland v. Greco* (1955) 45 Cal.2d 462, 467 [debtor may not waive antideficiency provisions in advance].)

the interests of the borrower-assignors and disagreed on the answer to the next question in our analysis: Whether the disposition of the action in the absence of the borrower-assignors might, as a practical matter, impair or impede their ability to protect their interest in the immunity from personal liability for a deficiency judgment.

### 4. Potential Impact of Litigation

Our evaluation of the potential impact of "the disposition of the action" as that phrase is used in subdivision (a)(2) of section 389, includes an examination of the relief requested by Brown. The complaint's (1) first cause of action requested money damages, (2) second cause of action requested reformation of the deeds of trust, (3) third cause of action requested injunctive relief preventing sales of the real property under the powers of sale in the deeds of trust, (4) fourth cause of action for declaratory relief requested the deeds of trust and related notices of default be declared void, and (5) fifth cause of action requested the deeds of trust and related notices of default be decreed void and the instruments delivered to the clerk of the court for cancellation.

If the deeds of trust are deemed void, they will be regarded as "without legal effect" and a mere nullity. (*Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 929.) If the deeds of trust are a nullity and without legal effect, then the loans will be unsecured and might be treated as though they never were secured by the real property collateral. If the loans are regarded as unsecured from their inception, the borrower-assignors might be personally liable for the entire unpaid balance of the loan as the concept of a deficiency (i.e., amount due minus the value of the collateral sold) would not apply to unsecured debt. Also, the invalidation of the deed of trust might be regarded as similar to a creditor's election of remedies where the creditor waives the real property security and seeks a personal money judgment against the debtor. (See *Walker v. Community Bank*, *supra*, 10 Cal.3d at p. 733 [in certain situations, creditor may waive real property security].) In certain situations where a creditor has waived the security interest created by the deed of trust, the creditor may sue the borrower and obtain a

26.

money judgment for the outstanding debt. (See *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991 [bank's violation of security-first rule in § 726 operated as a waiver of the security, but did not preclude bank from seeking a personal money judgment].) Similarly, a proceeding that voids the deeds of trust might allow the creditor to sue the borrower-assignors personally for the amount of the unsecured debt. Accordingly, we conclude the absence of the borrower-assignors from the action might, as a practical matter, impair their ability to protect their interest in being immune from liability for any deficiency or, viewed another way, from being personally liable for the entire loan balance.[14] For example, a particular borrower-assignor might examine his or her financial circumstances, determine the risk of personal liability for the unpaid loan balance outweighs the benefits of having the deed of trust declared void, and elect not to pursue the claims that might void or invalidate the deed of trust.

During oral argument, Brown contended any harm to the borrower-assignors' interest in immunity from personal liability was very unlikely because they also are protected by the homestead exemption. (See §§ 704.710–704.995 [homestead exemption].) This argument overestimates the protections available under the homestead exemption. First, the amount of the homestead exemption is $75,000, $100,000, or $175,000 depending upon the circumstances. (§ 704.730, subd. (a).) Second, the homestead exemption does not prohibit the involuntary sale of a dwelling, but assures homeowners they will receive the amount of the exemption in the event their property is sold to satisfy a judgment lien. (12 Miller & Starr, Cal. Real Estate, *supra*, § 43:3, pp. 43–12 to 43–13.) This amount can be used by the homeowner to acquire another residence. (*Id.*, § 43:3, p. 43–13.) These two characteristics of the homestead exemption demonstrate its protections are not the pragmatic equivalent of the immunity from

---

[14]At this stage of the proceedings, we cannot definitively state how the law would be applied to particular borrower-assignors or groups of borrower-assignors. For purposes of section 389, it is sufficient that there is a significant risk to the borrower of losing the antideficiency protections if the deeds of trust are declared void.

personal liability provided by California's antideficiency statutes. The homestead exemption is limited in amount and would not protect a borrower-assignor from having his or her wages garnished to satisfy a money judgment obtained to enforce the unsecured debt. Therefore, we conclude the potential harm to the borrower-assignors' immunity is not fully negated by the homestead exemption.

Based on the foregoing potential impacts of the litigation, we cannot accept Brown's prediction that, at worst, the borrower-assignors "will be in the same position as they were before the suit was filed" or his contention that they "have no interests that need protecting." The borrower-assignors have an interest in the protection provided by California's antideficiency statutes and that interest may as a practical matter be impaired by the disposition of this action. (§ 389, subd. (a)(2)(ii).)

We recognize Brown's arguments that the borrower-assignors have authorized and approved this lawsuit can be viewed as implying the borrower-assignors have voluntarily accepted the risks of litigation and the potential loss of the protections from personal liability. We, however, do not interpret the assignment documents as indicating the borrower-assignors knowingly and intelligently accepted the possibility they would lose the statutory antideficiency protections. Among other reasons, this interpretation relating to their state of mind is not reasonable in light of the record before this court. Specifically, there is insufficient evidence in the record to support a finding of a knowing and intelligent relinquishment of the protections from personal liability. First, the assignment agreements do not mention the risk. Second, there are no declarations stating a borrower-assignor knew or was informed of the risk before executing the assignment. Third, Brown's opposition papers to the motion to compel joinder did not acknowledge the borrower-assignors' interest in protection from a deficiency judgment and the risk associated with having the deeds of trust declared void. Fourth, the papers Brown filed in this court do not acknowledge the risk exists. As a result, Brown has cited no allegations,

much less evidence, that the borrower-assignors realized the potential consequences and chose to have Brown proceed with the litigation despite the risks of personal liability.[15]

Additional reasons support the conclusion that the disposition of the action in the absence of the borrower-assignors might as a practical matter impair or impede their ability to protect their immunity under the antideficiency statutes. Their absence could impair their ability to protect that interest because the existence and potential loss of the immunity would depend on the facts and circumstances surrounding each borrower-assignor's loan and those specific facts might not be developed and evaluated if the borrower-assignor is absent. Also, the assignments to Life Savers and subsequent assignments to Brown do not create any incentive for Brown to protect the borrower-assignors' immunity under the antideficiency statutes. Stated more bluntly, there is a conflict between (1) Brown's interest in freeing his 5 percent interest in the various parcels from the lien created by the deeds of trust and (2) the borrower-assignors' interest in maintaining immunity from personal liability for the unpaid loan balance.

### 5. *Probability of a Different Result*

The foregoing application of subdivision (a)(2)(i) of section 389 to the facts presented establishes that one of the statutory conditions for compulsory joinder exists in this case. We need not consider others. The last step in our analysis of prejudice is whether Brown has carried his burden of showing "a different result would have been probable" (§ 475) if we remand the matter to the trial court and direct it to exercise its statutory discretion and independently decide whether the condition of subdivision (a)(2)(i) of section 389 exists in this case.

---

[15]Furthermore, the fact no borrower-assignor has attempted to join in this lawsuit is insufficient to establish that the borrower-assignors realized the potential consequences and were willing to risk being personally liable for the balance of their loan. Accordingly, Brown's citation of federal cases where the absent party was aware of the litigation and made no attempt to join does not establish the borrower-assignors understood the potential consequences of this lawsuit and willingly accepted those risks.

We conclude Brown has not carried his burden of establishing he was prejudiced by the assumed legal error. In particular, Brown has not shown it is probable that, on remand, the trial court reasonably could determine joinder of the borrower-assignors is not compulsory under section 389, subdivision (a). Such a result is not "probable" for purposes of section 475 because it would not be reasonable for the trial court to conclude Brown's pursuit of this litigation does not subject the borrower-assignors to a significant risk—specifically, the risk of personal liability for the balance of their loan.

### III. Interpretation and Application of Section 369

#### A. Contentions of the Parties

Brown contends that, even if the application of section 389 leads to the conclusion that the borrower-assignors are necessary parties, a statutory exception authorizes him to bring the action without joining the borrower-assignors. The statutory exception is contained in subdivision (a)(3) of section 369, which provides that certain "persons may sue without joining as parties the persons for whose benefit the action is prosecuted," including "a person with whom … a contract is made for the benefit of another." Brown contends he, as Life Savers' assignee, is prosecuting the action expressly for the benefit of the borrower-assignors and, therefore, section 369 authorizes him to prosecute the action without joining the borrower-assignors.

In response, DOCX contends section 369 provides an exception to the general requirement in section 367 that a claim must be prosecuted by the real party in interest, and this exception allows fiduciaries to assert claims without joining the beneficiaries in the lawsuit. DOCX contends Brown is not a fiduciary of the borrower-assignors, and therefore, Brown is not covered by the provisions of section 369 and cannot rely on the exception.

#### B. Statutory Text

The parties' dispute about the meaning of section 369 presents this court with questions of statutory interpretation, which are questions of law subject to independent

30.

review.  (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.)  The analytical process of statutory construction begins with the statute's actual words, the most reliable indicator of legislative purpose.  (*Even Zohar Construction & Remodeling*, *Inc. v. Bellaire Townhouses*, *LLC* (2015) 61 Cal.4th 830, 837–838.)  Here, the relevant words in section 369 also appeared in earlier versions of the statute.  Consequently, our examination of the statutory text includes prior versions of section 369 as well as a related provision establishing historical context for the language in question.  (See *Smiley v. Citibank* (1995) 11 Cal.4th 138, 155 [statutory language is construed in its statutory and historical context]; *California Housing Finance Agency v. Patitucci* (1978) 22 Cal.3d 171, 177 [historical context].)

### 1.    Section 369 before 1988 Amendment

The original version of section 369 was amended by the Legislature in 1988.  (See Stats. 1988, ch. 530, § 2, p. 1965.)  Before the amendment, former section 369 provided:

> "'An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, *may sue without joining* with him *the persons for whose benefit the action is prosecuted.  A person with whom*, or in whose name, *a contract is made for the benefit of another*, is a trustee of an express trust, within the meaning of this section.'"  (*Bank of Orient v. Superior Court* (1977) 67 Cal.App.3d 588, 594, fn. 1, italics added.)

The italicized words appear in the current version of section 369 and are the words Brown contends apply to him.  Specifically, Brown argues that he is a person with whom a contract was made for the benefit of the borrower-assignors, and as a result, he may sue without joining the borrower-assignors.

### 2.    Section 369 from 1989 through 1992

In 1988, the Legislature revised section 369 so its provisions would not apply to a particular type of trustee—namely, a "trustee upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage."  (Leg. Counsel's Dig., Assem. Bill No. 1830, 4 Stats. 1988 (1987–1988 Reg. Sess.) Summary Dig., pp. 159–160.)  The language added in 1988 to create this exemption is not relevant to the questions of

31.

statutory interpretation before us.  Consequently, the text of the revised version of section 369 in effect from 1989 through 1992 is not set forth in this opinion.  (See Stats. 1988, ch. 530, § 2, p. 1965; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 427 [quoting former § 369, subd. (a)].)

### 3. *Section 369's Current Wording*

In 1992, the Legislature amended section 369 again as part of a comprehensive revision of the statutes governing litigation involving decedents.  (Stats. 1992, ch. 178, § 12, p. 888; see Litigation Involving Decedents (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 895; 3 Witkin, Cal. Procedure, *supra*, Actions, § 12, p. 74.)  As a result of the 1992 amendment, section 369 now provides:

"(a) *The following persons may sue without joining as parties the persons for whose benefit the action is prosecuted*:

"(1) A personal representative, as defined in subdivision (a) of Section 58 of the Probate Code.

"(2) A trustee of an express trust.

"(3) Except for a person upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage, *a person with whom*, or in whose name, *a contract is made for the benefit of another*.

"(4) Any other person expressly authorized by statute."  (Italics added.)

The 1992 amendment reorganized section 369's text and clarified terminology. (Litigation Involving Decedents, *supra*, 22 Cal. Law Revision Com. Rep., at p. 923.) "These changes [we]re technical and not substantive."  (*Ibid.*)  Thus, the California Law Revision Commission's comments reinforce our conclusions that the prior versions of section 369 are relevant to the questions of statutory construction presented in this case.

### 4. *Relationship to Section 367*

The foregoing versions of section 369 establish part of the historical context for the language under consideration.  Another part of the historical context is provided by

the two most recent versions of section 367—the statute containing California's general standing requirements. (See *Weatherford v. City of San Rafael*, *supra*, 2 Cal.5th at p. 1249 [general requirements for standing under § 367].)

In 1976, the Legislature amended the standing requirements in section 367 to read as follows:

> "Every action must be prosecuted in the name of the real party in interest, except as provided in Sections 369 and 374 of this code." (Stats. 1976, ch. 595, § 1, p. 1439;[16] see *Saks v. Damon Raike & Co.*, *supra*, 7 Cal.App.4th at p. 427 [quoting former § 367].)

This version of section 367 was modified by the 1992 legislation that revised section 369. The amendment to section 367 eliminated the reference to sections 369 and 374 and replaced it with general language. (See Stats. 1992, ch. 178, §§ 10 & 12, p. 888.) As a result, section 367 now provides:

> "Every action must be prosecuted in the name of the real party in interest, except as *otherwise provided by statute*." (Italics added.)

The California Law Revision Commission described the 1992 amendment to former section 367 as follows:

> "Section 367 is amended to eliminate the obsolete listing of statutes that permit prosecution of an action in the name of a person other than the real party in interest. Statutes that permit prosecution in the name of a person other than the real party in interest include Civil Code Section 1363 (association to manage common interest development), Code of Civil Procedure Section 369 (fiduciaries), and Probate Code Sections 550–555 (insured claims)." (Litigation Involving Decedents, *supra*, 22 Cal. Law Revision Com. Rep., *supra*, at p. 922.)

The foregoing versions of section 367 and the comments of the Law Revision Commission demonstrate that section 369 is an exception to the real party in interest

---

[16]In 1976, the Legislature revised section 367 to include a cross-reference to the newly enacted section 374, a provision specifically granting standing to property owners' associations so they could sue for injuries to commonly owned areas without joining the individual owners of the condominiums or similar projects. (Leg. Counsel's Dig., Sen. Bill No. 1542, 4 Stats. 1976 (1975–1976 Reg. Sess.) Summary Dig., pp. 149–150; see *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580.)

requirement set forth in section 367.  This conclusion about the relationship of the statutes is significant in this case because Brown contends he is a real party in interest who satisfied the real party in interest requirement of section 367 because of the interests he acquired through the assignments and grant deeds.  (See Civ. Code, §§ 953 [definition of "thing in action"], 954 [thing in action may be transferred]; *Wikstrom v. Yolo Fliers Club* (1929) 206 Cal. 461, 464 [code sections lifted many restrictions on assignability of causes of action]; *Timed Out*, *LLC v. Youabian*, *Inc.* (2014) 229 Cal.App.4th 1001, 1009 [cause of action arising out of a wrong involving injury to real property may be assigned].)

### C.      Determination of Meaning

#### 1.      Ambiguity

Having set forth the actual words used in the current and earlier versions of sections 367 and 369, we turn to the threshold legal question of whether the words used in section 369 are ambiguous—that is, reasonably susceptible to more than one interpretation.  (*California Public Records*, *Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1454; *Merced Irrigation District v. Superior Court* (2017) 7 Cal.App.5th 916, 925 [whether statutory language is ambiguous is a question of law].)

We conclude the phrase "the persons for whose benefit the action is prosecuted" is susceptible to more than one interpretation and, therefore, is ambiguous.  (§ 369, subd. (a).)  This statutory text does not explicitly address the degree or proportion of the benefit that would be obtained by "the persons for whose benefit the action is prosecuted."  Similarly the reference to a contract "made for the benefit of another" (*id.*, subd. (a)(3)) does not address the degree or proportion of the benefit that would be realized by the person for whose benefit the contract was made.

We conclude it is reasonable to interpret the phrase "the persons for whose benefit the action is prosecuted" as being limited to the persons who will obtain *all* of the benefits for the action.  Under this interpretation, the phrase would refer to "the persons

34.

for whose *sole* benefit the action is prosecuted." Alternatively, it is reasonable to interpret the phrase more expansively so that it covers persons who would obtain *some* of the benefits of a successful action. Under this interpretation, the phrase would refer to "the persons for whose benefit, *in whole or in part*, the action is prosecuted" and the reference to a contract "made for the benefit of another" would encompass a contract "made for the *partial* benefit of another." Based on these two possible interpretations, we conclude the language in section 369, subdivision (a) is ambiguous.

### 2. *Resolving the Ambiguity*

When a statute's text is ambiguous, courts presume the Legislature intended reasonable results consistent with the apparent purpose of the legislation. (*Imperial Merchant Services*, *Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.) Stated another way, our role is "to identify the interpretation that best effectuates the legislative intent." (*Beal Bank*, *SSB v Arter & Hadden*, *LLP* (2007) 42 Cal.4th 503, 508.)

The text in the various versions of sections 367 and 369 and the California Law Revision Commission's 1992 comment to section 367 demonstrate that the purpose of section 369 is to create an exception to the real party in interest requirement contained in section 367 so that fiduciaries are not required to join the beneficiaries for whose benefit they are acting in the litigation. We have located no materials identifying a different purpose. For instance, Brown has cited no legislative history or other sources showing a purpose underlying section 369 was to address situations created by partial assignments and allow a partial assignee to pursue litigation on behalf of one or more partial assignors without joining the assignors. Therefore, we conclude the interpretation that best effectuates the legislative purpose requires the phrase "the persons for whose benefit the action is prosecuted" to be interpreted to mean "the persons for whose *sole* benefit the action is prosecuted." Under this interpretation, when the interests in the outcome of the action are divided among the person prosecuting the action and the others, the plaintiff is not an adequate stand-in for the absent persons, and the usual rules of standing and

35.

joinder would apply.  Restated in the language of subdivision (a)(3) of section 369, when the contract or contracts in question do not create a fiduciary relationship in which the plaintiff is acting solely for the benefit of another person or group of persons, the plaintiff is not "a person with whom … a contract is made for the [sole] benefit of another." Instead, the contracts were "made for the benefit of" both the plaintiff and the others.

In summary, section 369, subdivision (a)(3) does not apply to assignments where the plaintiff obtains a partial interest in the outcome of the litigation and the assignors retain a partial interest in the outcome.  Consequently, that provision does not authorize Brown to proceed with this litigation without joining the borrower-assignors and does not provide a basis for overturning the trial court's joinder order.

## IV.    Other Issues[*]

### A.    Indispensable Parties

DOCX argues this court should determine the borrower-assignors are indispensable parties for purposes of section 389, subdivision (b).  We do not reach that question.  First, the trial court did not reach that question because it relates to whether to dismiss an action when a necessary party cannot be joined.  Second, there has been no showing one or more borrower-assignors cannot be joined (or joinder is impracticable) and, consequently, the question of dismissing claims related to a particular borrower-assignor's loan and property is not before this court.

### B.    Joinder of Group M

Brown contends the cause of action for cancellation of instruments in his third amended complaint has eliminated references to the borrower-assignors whose properties have been sold at foreclosure and, therefore, those borrower-assignors (i.e., Group M) are no longer subject to joinder under the trial court's ruling.  We make no determination as to whether the borrower-assignors in Group M are or are not subject to joinder due to the

---

[*]See footnote, *ante*, page 1.

36.

filing of the third amended complaint. If that question generates a dispute in subsequent proceedings, the trial court can decide the question in the first instance.

## DISPOSITION

The petition for writ of mandate is denied. This court's July 1, 2016, stay of the superior court's June 3, 2016, order is lifted.

The parties appearing in this writ proceeding shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

_____
PEÑA, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
SMITH, J.

37.